UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

STEVEN STRONG,

                Petitioner,

v.

WARDEN, Atttica Correctional Facility,

                Respondent.

----------------------------------------------------------------x

**MEMORANDUM & ORDER**
10 CV 3452 (MKB)

MARGO K. BRODIE, United States District Judge:

Petitioner Steven Strong, proceeding *pro se*, brings the above-captioned petition pursuant to 28 U.S.C. § 2254, in which he alleges that he is being held in state custody in violation of his federal constitutional rights. Petitioner's claims arise from a judgment of conviction after a jury trial in New York Supreme Court, Queens County for criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree and two counts of criminal possession of stolen property in the fifth degree. Petitioner was sentenced, as a persistent violent felony offender, to concurrent terms of 18 years to life for second-degree criminal possession of a weapon and 14 years to life for third-degree criminal possession of a weapon, as well as a one-year sentence for each count of fifth-degree criminal possession of stolen property. Petitioner appealed his conviction to the New York Appellate Division, Second Department, alleging that he received ineffective assistance of counsel and that the trial court erred in denying his motion to set aside the verdict without first holding a hearing. The Appellate Division rejected Petitioner's claims and affirmed his conviction. *People v. Strong*,

892 N.Y.S.2d 902 (App. Div. 2010). The New York Court of Appeals denied leave to appeal. *People v. Strong*, 903 N.Y.S.2d 781 (2010). Petitioner raises both claims in the instant petition. For the reasons set forth below, the petition is denied.

## I. Background

The evidence at trial established that just before 7:00 p.m. on January 17, 2006, two masked men entered a car dealership in Queens County. (Resp't Aff. ¶ 3.) The manager of the car dealership, Mohammad Ishaque, testified that he saw Petitioner and another man walk across the car lot and climb the stairs to Ishaque's office, as they pulled masks over their heads. (Resp't Opp. 11.) When the two men entered the car dealership, they were wearing ski masks. (Resp't Aff. ¶ 3.) One of the masked men was wearing a blue jacket. (Resp't Opp. 12.) The man in the blue jacket told everyone at the dealership to get down and hand over their money. *Id.* Ishaque had previously sold two cars to Petitioner, and he testified that he recognized that the blue-jacketed man's voice was Petitioner's voice. *Id.* The blue-jacketed man then hit Ishaque over the head with a pistol and stole his wallet, camera and briefcase before fleeing in Petitioner's car. (Resp't Aff. ¶ 3.) Police officers chased Petitioner in his car, until Petitioner crashed the car and fled on foot. *Id.* Police officers eventually apprehended Petitioner, who was jacketless and sweaty. *Id.* Petitioner told the police officers that he had been carjacked at gun point by two masked men. *Id.* The police then found the blue jacket hidden under a nearby car. *Id.* Wrapped inside the jacket, the police found a loaded pistol, two black gloves, a camera and a wallet. *Id.* Inside Petitioner's car, police officers found a telephone, briefcase, black ski mask and brown hat. *Id.* Ishaque identified Petitioner as the gunman that had been wearing a blue jacket. *Id.*

Petitioner and an alleged accomplice were charged with four counts of robbery in the first degree, three counts of robbery in the second degree, one count of criminal possession of a

weapon in the second degree, one count of criminal possession of a weapon in the third degree, one count of assault in the second degree and two counts of criminal possession of stolen property in the fifth degree. *Id.* at ¶ 4. After a jury trial, Petitioner was found guilty of criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree and two counts of criminal possession of stolen property in the fifth degree. *Id.* at ¶ 7. Petitioner was acquitted of the robbery and assault charges. *Id.* Petitioner's co-defendant was acquitted of all charges. *Id.* After the trial, Petitioner obtained new counsel. *Id.* at ¶ 8. Petitioner's new counsel moved to set aside the verdict pursuant to New York Criminal Procedure Law § 330.30 (the "330.30 motion"), claiming that he had received ineffective assistance of counsel. *Id.* Specifically, Petitioner claimed that trial counsel failed to investigate adequately, failed to present exculpatory evidence and elicited damaging evidence. *Id.* Petitioner's motion was denied. *Id.* at ¶ 9.

Petitioner filed a post-conviction motion to vacate the judgment pursuant to New York Criminal Procedure Law § 440.10 (the "440.10 motion"). *Id.* at ¶ 14. Petitioner again raised an ineffective assistance of counsel claim, alleging the same errors as in his 330.30 motion as well as an additional argument that counsel failed to present exculpatory DNA evidence. *Id.* The court held that Petitioner's ineffective assistance of counsel claim was procedurally barred for two reasons. *Id.* at ¶ 15. First, his claim was barred because "there are sufficient facts on the record to raise the issue on direct appeal." (Dec. 2, 2008 Decision & Order ("440.10 Order") at 2 (*citing* N.Y. Crim. Proc. Law § 440.10(2)(b)).) Second, Petitioner's claim was barred because he had raised the same claim in his 330.30 motion. *Id.* (*citing* N.Y. Crim. Proc. Law § 440.10(3)(b)).) In any event, the court found Petitioner's claim to be without merit. *Id.* Petitioner did not appeal the court's denial of his 440.10 motion. (Resp't Aff. ¶ 16.)

3

Petitioner then filed a direct appeal from his conviction, alleging that he received ineffective assistance of counsel and that the trial court had erred in denying his 330.30 motion without first holding a hearing. *Id.* at ¶ 17. The Appellate Division affirmed Petitioner's conviction, finding that "the defendant received meaningful representation" and that "the Supreme Court properly denied, without a hearing, the defendant's motion pursuant to CPL 330.30 to set aside the verdict." *People v. Strong*, 892 N.Y.S.2d 902, 902 (App. Div. 2010). The New York Court of Appeals denied leave to appeal. *People v. Strong*, 903 N.Y.S.2d 781, 781 (2010). Accordingly, Petitioner's claims are exhausted. *See* 28 U.S.C. § 2254(b)(1) ("An application for habeas corpus . . . shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State.").

## II. Discussion

### a. Standard of Review

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

For the purposes of federal habeas review, "clearly established law" is defined as the "the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is

4

"contrary to," or an "unreasonable application of," clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412–13. In order to establish that a state court decision is an unreasonable application, the state court decision must be "more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The decision must be "objectively unreasonable." *Id.* In addition, factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### b. Ineffective Assistance of Counsel

In order to prove ineffective assistance of counsel, a defendant must show that counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694. Where the state court has found that the petitioner received effective assistance of counsel, the Court reviews that decision under the deferential standard of AEDPA. 28 U.S.C. § 2254(d).

In order to prevail on his ineffective assistance of counsel claim, Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal citations and quotations omitted). For the most part, the Court finds that the errors Petitioner alleges were reasonable

5

trial strategies.[1] However, trial counsel's failure to interview Odari Jervis cannot be explained as "sound trial strategy." *Id.* The People argued at trial that Petitioner was the assailant wearing the blue jacket that assaulted and robbed Ishaque at the car dealership. Jervis was standing outside of the car dealership when the two masked men entered, and he witnessed the assault. (Pet'r Traverse Attach. 1 ("Brettschneider Aff.") ¶ 4.) Prior to trial, the People provided Petitioner's trial counsel with a police report containing a statement Jervis gave the night of the incident. (Resp't Opp. 27.) In that report, Jervis describes the blue-jacketed assailant's height as six feet four inches, significantly taller than Petitioner, who is five feet eight inches, and similar in height to Petitioner's co-defendant. *Id.* The People made Jervis available at trial, and the trial court provided defense counsel with a recess in order to interview Jervis. (Brettschneider Aff. at ¶¶ 6–7.) Counsel for Petitioner's co-defendant, Scott Bettschneider, went out into the hall and

---

[1] First, Petitioner argues that trial counsel elicited damaging testimony from two of the People's witnesses and one of Petitioner's witnesses, Office Mufano. (Pet. 6; Pet'r Appellate Br. 35–39.) Petitioner's trial counsel sought to challenge the People's identification evidence through his examination of these three witnesses. (Resp't Opp. 29–30.) Although he did elicit some testimony consistent with the People's theory, his questioning did not fall below an objective standard of reasonableness. *See Martinez v. United States*, No. 09 Civ. 3692, 2010 WL 5391189, at *3 (E.D.N.Y. Dec. 22, 2010) ("It was reasonable strategy for [counsel] to challenge the Government's case by attempting to shift blame . . . , even if [counsel's] questions ultimately elicited the admission of harmful evidence."). Next, Petitioner argues that his counsel failed to use exculpatory DNA evidence. (Pet. 6.) In the middle of trial, the People sought to admit recently received DNA evidence that the DNA of Petitioner's co-defendant was found on the zipper of the blue jacket and the DNA of both Petitioner and his co-defendant was found on the gloves and mask. (Tr. 443–44.) Petitioner and his co-defendant objected because counsel had told the jury in their opening statements that there would be no DNA evidence. *Id.* at 448–49. The Court agreed and excluded the DNA evidence. *Id.* at 449. Had Petitioner's trial counsel sought the admission of the DNA analysis from the blue jacket, the analyses from the gloves and mask would have also been admitted; therefore, trial counsel reasonably decided not to seek the admission of the DNA evidence from the blue jacket. Finally, Petitioner argues that trial counsel failed to investigate or submit medical records that suggested that Petitioner was incapable of jumping a seven to eight foot fence, as the People claimed he had when he was running away from the police. (Pet'r Appellate Br. 39–40.) However, Petitioner told the police that he had jumped over a fence to escape the carjackers. (Resp. Appellate Opp. 9.) The medical records would have undermined the credibility of Petitioner's statement to the police.

6

interviewed Jervis. *Id.* at ¶ 8. As in his statement to the police, Jervis told Brettschneider that the man in the blue jacket had been the one that hit Ishaque in the head with a gun and that the blue-jacketed assailant was approximately six feet four inches. *Id.* at ¶¶ 9–10. Brettschneider decided not to call Jervis because his testimony suggested that Petitioner's co-defendant, not Petitioner, was the blue-jacketed assailant. *Id.* at ¶ 12. Brettschneider returned to the courtroom and told Petitioner's trial counsel that he should speak to Jervis, but Petitioner's trial counsel responded, "I don't need to talk to him." *Id.* at ¶¶ 13–14.

Respondent claims that Petitioner's counsel "knew what Jervis had seen and had a reasonable, strategic basis for declining to [interview] him." (Resp't Opp. 27.) Respondent does not offer any possible strategic basis, nor could it, given that trial counsel's strategy was to attack the evidence that identified Petitioner as the assailant in the blue jacket. In fact, Petitioner's trial counsel called Petitioner's fiancée as a witness to testify that Petitioner was not wearing a blue jacket that night and did not even own a blue jacket. (Resp't Opp. 14.) Jervis' testimony regarding the height of the blue-jacketed assailant could have helped Petitioner, and a review of the trial record does not suggest any "strategic basis" for failing to interview Jervis. Still, even if trial counsel erred in failing to interview Jervis, Petitioner was not denied effective assistance of counsel.

While it is possible that, in certain instances, "even an isolated error" can support an ineffective-assistance claim, "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Harrington v. Richter*, 562 U.S. ----, ----, 131 S. Ct. 770, 791 (2011). Furthermore, in reviewing trial counsel's performance, the Court recognizes that "the question is not whether [it] believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a

7

substantially higher threshold." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (internal quotations and citations omitted). The trial court, in denying Petitioner's 330.30 motion, held:

> Rather than being ineffective, the Court finds that [trial counsel's] representation of Mr. Strong was highly effective, despite being identified by the complaining witness at trial, and shortly thereafter, after the alleged robbery, as one of the participants in an armed robbery. And despite other evidence, including the statement to the police at the time of his arrest linking him to the crime, Mr. Strong was acquitted of the top charges of robbery and assault in connection with this matter, and convicted only of charges of weapons possession and possession of stolen property. . . . That counsel might have pursued other strategies to dispute the People's proof that Mr. Strong was wearing a blue jacket on the night in question, does not render his representation of Mr. Strong ineffective, or cast any doubt on the integrity of the jury's verdict.

(Nov. 15, 2007 Hearing Tr. 3–4.) On direct appeal, the Appellate Division held, "[v]iewing the evidence, the law, and the circumstances of the case in their totality and as of the time of the representation, we find that the defendant received meaningful representation." *Strong*, 892 N.Y.S.2d at 902. At trial, Petitioner's counsel argued that Petitioner arrived at the car dealership and two masked men jumped into his car. (Tr. 17–21.) With this theory, Petitioner's counsel was able to explain why he was driving the get-away car and why he fled on foot after the car crashed. Petitioner's counsel used Ishaque's pending indictment for fraudulent business practices to attack Ishaque's identification of Petitioner, as Ishaque was the only one who identified Petitioner as the blue-jacketed assailant. (Tr. 18–19; 166–67.) As a result, Petitioner was acquitted of all robbery and assault charges, even though Petitioner was apprehended, jacketless on a winter night, close to the blue jacket, gun and wallet. Based on the record, the Court finds that Petitioner's trial counsel was an active and capable advocate. Petitioner's ineffective assistance of counsel claim is denied.

### c. Denial of Petitioner's 330.30 Motion

A federal court can only grant a writ of habeas corpus where a petitioner is in state custody in violation of "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. The United States Constitution does not compel states to provide post-conviction proceedings for relief. *Lackawanna Cnty. Dist. Attorney v. Coss*, 532 U.S. 394, 402 (2001). The Court of Appeals for the Second Circuit recently held that, because federal law does not require states to provide a mechanism for post-conviction relief, "alleged errors in a post-conviction proceeding are not grounds for § 2254 review." *Word v. Lord*, 648 F.3d 129, 132 (2d Cir. 2011). Petitioner's claim that the trial court erred in denying his 330.30 motion without conducting a hearing does not implicate federal law and is not cognizable for habeas review. *See id.* ("[The petitioner's] claim of a procedural right to a state post-conviction proceeding does not implicate federal law."); *Jones v. Duncan*, 162 F. Supp. 2d 204, 217 (S.D.N.Y. 2001) (petitioner's claim that the trial court violated his due process right by denying his Section 330.30 and 440.10 motions without holding a hearing was not cognizable on habeas review).

## III. Conclusion

For the foregoing reasons, the petition for habeas corpus is denied and the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253. It is further certified pursuant to 28 U.S.C. § 1915(a) that any appeal would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438 (1962). The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: May 22, 2012
Brooklyn, NY

/S/
_____
MARGO K. BRODIE
United States District Judge